*DIF*

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUN 12 2017 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LG CAPITAL FUNDING, LLC,

                Plaintiff,

-against-

POSITIVEID CORPORATION,

                Defendant.
------------------------------------------------------------X

MEMORANDUM & ORDER

17-CV-1297 (NGG) (SMG)

NICHOLAS G. GARAUFIS, United States District Judge.

On March 7, 2017, Plaintiff LG Capital Funding, LLC ("LG") commenced this breach of contract action against Defendant PositiveID Corporation ("PSID"). (Compl. (Dkt. 1).) LG alleges that PSID breached the parties' convertible note agreement by failing to (1) replenish its share reserve; and (2) deliver stock to which LG is entitled under the terms of the parties' agreement. (Id. ¶¶ 10-14.) LG further avers that PSID has anticipatorily breached the parties' contract by making clear that it will not abide by its terms. (Id. ¶¶ 16, 49-50.)

LG has moved for a preliminary injunction and for preliminary declaratory relief pursuant to Federal Rule of Civil Procedure 65 and 28 U.S.C. § 2201, pending final determination of this action (the "Motion"). (Mot. for Prelim. Inj. ("Mot.") (Dkt. 2).) For the reasons set forth below, LG's Motion is DENIED.

I. BACKGROUND

PSID is a "life sciences tools and diagnostics company specializing in biological detection and molecular diagnostic systems for America's homeland defense and the global healthcare market."[1] In or about 2012, PSID sought capital to grow its business. (Decl. of

---

[1] PositiveID Corporation Home Page, https://www.psidcorp.com/ (last visited June 8, 2017).

1

William Caragol in Opp'n to Mot. ("Caragol Decl") (Dkt. 13) ¶ 2.)[2] Since then, PSID has borrowed several million dollars from a group of lenders, including LG, and has approximately $6 million in outstanding debt today. (Id. ¶ 3.) PSID's stock is publicly traded. (Id. ¶ 48.)

### A. The Note

On July 7, 2016, PSID issued a $66,150, 10% convertible redeemable note to LG (the "Note"). (Compl. ¶ 1; see also Note (Dkt. 2-2).)[3] According to LG, this Note is the sixth investment that LG has made in PSID. (Pl. Reply Mem. in Supp. of Mot. ("Pl. Reply") (Dkt. 15) at 1.) The relevant terms of the Note are summarized below.

#### 1. Conversion Rights

Section 4(a) of the Note entitles LG to convert any portion of the outstanding balance owed on the Note into shares of PSID's common stock ("Conversion Shares") at a price per share "equal to 65% of the lowest trading price reported . . . for the fifteen prior trading days," inclusive of the day upon which the request is received. (Note § 4(a).) If LG elects to exercise its conversion right, it must provide written notice to PSID ("Notice of Conversion"). (Id. § 3.) PSID must deliver the Conversion Shares to LG within three business days of receiving the Notice of Conversion. (Id. § 4(a).)

#### 2. Share Reserve

Section 12 of the Note requires PSID to "at all times reserve a minimum of four times the amount of shares required if the note would be fully converted." (Id. § 12.) LG may "reasonably request increases from time to time to reserve such amounts." (Id.)

---

[2] William Caragol is the Chief Executive Officer of PSID. (Caragol Decl. ¶ 1.)
[3] Joseph Lerman is a member of LG. (Decl. of Joseph Lerman in Supp. of Mot. (Dkt. 2-1) ¶ 1.)

2

### 3. Events of Default & Damages Penalty Provision

Section 8 of the Note outlines certain "Events of Default." (Id. § 8.) These events include: PSID's non-payment of principal or interest (Note § 8(a)); PSID's failure to deliver stock within three days of receipt of a Notice of Conversion (id. § 8(k)); and PSID's failure to replenish the share reserve upon request from LG (id. § 8(l)).

If an Event of Default is not cured within five days, the Note becomes immediately due and payable. (Id. at 5.) Upon default, interest shall accrue at a default interest rate of 24% per annum. (Id.) If PSID fails to deliver stock within three days of LG submitting a Notice of Conversion, PSID must pay LG $250 per day that the Conversion Shares are not issued, beginning on the 4th day after LG submits a Notice of Conversion to PSID. (Id.) The penalty increases to $500 per day beginning on the 10th day. (Id.)

The Note also includes what PSID refers to as the "Damages Penalty Provision"[4]: if PSID fails to deliver the Conversion Shares to LG by the 3rd business day following delivery of a Notice of Conversion and LG suffers a "Failure to Deliver Loss," then PSID must make LG whole by paying the "Failure to Deliver Loss." (Id. at 6.) The "Failure to Deliver Loss" is the "high trade price at any time on or after the day of exercise" multiplied by the "number of conversion shares." (Id.)

## B. LG's Share Reserve and Conversion Requests

On or about January 9, 2017, LG requested an increase in the number of shares in PSID's share reserve. (Compl. ¶ 7.) In accordance with the terms of the Note, LG submitted this request to PSID's transfer agent, VStock Transfer LLC ("VStock"). (Id.) On that same day, VStock

---

[4] (See Def. Mem. in Opp'n to Mot. ("Def. Opp'n") (Dkt. 14) at 5.)

3

replied as follows: "[a]t this time we are unable to process the request below as the company does not have any shares available in treasury." (Id. ¶ 8.)

On or about January 24, 2017, LG submitted a Notice of Conversion to PSID, electing to convert $16,150.00 of the principal amount and $889.36 of accrued interest of the Note into 65,536,000 Conversion Shares. (Id. ¶ 10; Not. of Conversion (Dkt. 2-5).) The conversion remains outstanding. (Compl. ¶ 11.)

LG considers these events "Events of Default" under Section 8 of the Note. (Id. ¶¶ 15-23.) On or about February 2, 2017, LG sent PSID a letter, demanding that PSID deliver "65,536,000 shares of Common Stock to LG and maintain the requisite number of shares in the reserve to allow for future conversions under the Notes in accordance with PSID's obligation under Section 12 of the Notes." (See Decl. of Joseph Lerman in Supp. of Mot. ("Lerman Decl.") (Dkt. 2-1) ¶ 27; Default Letter (Dkt. 2-6) at 2.) PSID has not delivered the Conversion Shares to LG and admits that it is in default on its obligations. (See Tr. of Hr'g on Mot. ("Hr'g Tr.") (Docket Number forthcoming) 14:21-15:1.)

## II. DISCUSSION

LG seeks a mandatory preliminary injunction and preliminary declarative relief to remedy the alleged Events of Default. The requested injunction is a "mandatory injunction" because it serves to alter the status quo by requiring PSID to take certain affirmative actions. See Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 34 (2d Cir. 1995) (holding that a mandatory injunction is one which "alter[s] the status quo by commanding some positive act"). Specifically, LG seeks an order, pending final determination of this action:

> i. requiring PSID to deliver immediately to [LG] 65,536,000 shares of its Common Stock, along with the necessary corporate resolutions to enable LG to sell such Common Stock publicly without restriction; and,

4

ii. requiring PSID to instruct its Transfer Agent, or any future Transfer Agents, should PSID change Transfer Agents, to reserve the requisite amount of shares of PSID common stock, and replenish the reserve as needed, to allow for the full conversion of the remaining principal balance and accrued interest of the PositiveID Corporation 10% Convertible Redeemable Note held by LG; and,

iii. directing PSID, during the pendency of this action, to honor, in accordance with the agreement between the parties, all conversion requests hereafter duly submitted by LG to convert all or any portion of the PositiveID Corporation 10% Convertible Redeemable Note held by LG into shares of PSID Common Stock, and to deliver all necessary corporate resolutions to enable LG to sell such shares publicly without restriction; and,

iv. Directing PSID to take all necessary steps to increase the authorized shares of PSID so as to comply fully with the terms of the Note, if so required; and,

v. Directing PSID to remain current in its filings with the Securities and Exchange Commission ('SEC'); and,

vi. Finding that the posting of a bond is not required under Rule 65 of the Federal Rules of Civil Procedure.

(Pl. Mem. in Supp. of Mot. ("Pl. Mem.") (Dkt. 2-8) at 1-2.)

PSID opposes LG's Motion, arguing that (1) this court lacks subject matter jurisdiction over the action; and (2) LG cannot establish the elements required to obtain a mandatory injunction. (Def. Mem. in Opp'n to Mot. ("Def. Opp'n") (Dkt. 14) at 1-2.)

As set forth below, the court finds that it has jurisdiction over the action but denies the Motion on the grounds that LG has not made a "strong showing of irreparable harm," as is required to justify issuance of a mandatory injunction. N.Y. ex rel. Schneiderman v. Actavis PLC, 787 F.3d 638, 650 (2d Cir. 2015).

## A. The Court Has Subject Matter Jurisdiction

LG alleges in its Complaint that the court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2), as "the action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs." (Compl. ¶ 3.) In its prayer for relief, LG seeks at least $250,000 in damages for PSID's failure to deliver the Conversion Shares. (Id. at 12.)

While PSID does not dispute that the parties are diverse,[5] it argues that the amount in controversy does not exceed $75,000. (Def. Opp'n at 1-2, 6.) PSID argues that the Note is void and unenforceable, as it is "criminally usurious," and LG's damages are therefore limited to $17,039.36—the $16,150 of principal and $889.36 of interest that LG sought to convert into Conversion Shares on January 24, 2017. (See id. at 1-2, 6; Hr'g Tr. 8:18-9:14.)

### 1. Legal Standard

"A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount."[6] Tongkook Am., Inc. v. Shipton Sportswear Co., 14 F.3d 781, 784 (2d Cir. 1994) (internal citation omitted)). This burden is "hardly onerous, however," as there is "'a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy.'" Scherer v. Equitable Life Assurance Soc'y of U.S., 347 F.3d 394, 397 (2d Cir.

---

[5] LG is a limited liability company whose members are citizens of New York. (Compl. ¶ 1.) PSID is a Delaware corporation with its principal place of business in Florida. (Id. ¶ 2.)

[6] Cf. Savoie v. Merchs. Bank, 84 F.3d 52, 57 (2d Cir. 1996) ("Where a challenge to jurisdiction is interposed on an application for a preliminary injunction '[t]he plaintiff is required to adequately establish that there is at least a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits.'" (internal citation omitted) (discussing federal question jurisdiction)); Vis Vires Grp., Inc. v. Endonovo Therapeutics, Inc., 149 F. Supp. 3d 376, 388 (E.D.N.Y. 2016) (holding that, in the absence of federal question jurisdiction, plaintiff must show "at least a reasonable probability" that diversity jurisdiction exists (citing Savoie, 84 F.3d at 57)).

2003) (quoting Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc., 166 F.3d 59, 63 (2d Cir. 1999)).

In order to overcome this presumption, the party opposing jurisdiction must show 'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold." Id. (quoting Wolde-Meskel, 166 F.3d at 63). The Second Circuit has acknowledged that it has "set a high bar for overcoming this presumption:"

> [T]he legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim. . . . [E]ven where [the] allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted.

Id. (internal citations omitted); see also Tongkook, 14 F.3d at 785 ("Where the damages sought are uncertain, the doubt should be resolved in favor of the plaintiff's pleadings.")

Importantly, affirmative defenses "may not be used to whittle down the amount in controversy." Scherer, 347 F.3d at 397 (explaining that, "[w]ere [affirmative] defenses to affect the jurisdictional amount . . . doubt and ambiguity would surround the jurisdictional base of most diversity litigation from complaint to final judgment[, and i]ssues going to a federal court's power to decide would be hopelessly confused with the merits themselves" (internal quotation marks and citation omitted)).

2. Analysis

The court finds that there is a "reasonable probability" that LG's claim exceeds $75,000. See Tongkook Am., 14 F.3d at 784. LG's claim based on PSID's breach for failure to deliver the Conversion Shares, coupled with the outstanding balance of the Note, amounts to at least $89,000. (See Hr'g Tr. at 35:10-17 (LG arguing that "even if you take the amount of damages on the day of the conversion . . . [and add] that to the principal and interest remaining on the note of $50,000, you're, again, above the jurisdictional threshold").) As such, the jurisdictional

threshold is met even without including (1) damages stemming from PSID's alleged anticipatory breach or (2) the liquidated damages provided for in the Note.[7]

As discussed in more detail infra in Section II.B.2.ii., damages in a breach of contract action where "the breach involves the deprivation of an item, such as a stock, with a determinable market value" are measured based on the "the market value [of the item] at the time of the breach." Sharma v. Skaarup Ship Mgmt. Corp., 916 F.2d 820, 825 (2d Cir. 1990). The parties appear to agree that the market value of the requested 65,536,000 Conversion Shares[8] at the time of breach is $39,321.60.[9] (See Hr'g Tr. 43:17-7, 48:9-14.) While the market value of the Conversion Shares alone does not satisfy the jurisdictional requirement, the Note includes an acceleration clause which, when taken into account, brings the amount in controversy above $75,000. The acceleration clause provides that if, within five days of an Event of Breach, PSID has not cured its failure to deliver the Conversion Shares, LG "may consider th[e] Note immediately due and payable." (Note § 8(n).) Because the conversion request is still outstanding, the damages figure also includes the balance of the Note ($50,000). (See Decl. of Kevin Kehrli in Supp. of Mot. (Dkt. 17) ¶ 4; Hr'g Tr. at 35:10-17.) Accordingly, even without considering the Damages Penalty Provision or damages stemming from PSID's alleged

---

[7] In its Complaint, LG seeks at least $250,000 in damages. (Compl. at 12.) LG arrives at this figure by adding (1) its lost profits based on PSID's failure to deliver the Conversion Shares on January 24, 2017, and (2) its lost profits based on future conversions. (Id. ¶¶ 25-26.) LG argues, in the alternative, that it is entitled to $90,064.47, which represents the sum of: the principal balance of the Note; regular interest accrued; default interest accrued; and liquidated damages. (Id. ¶ 27.) Because the jurisdictional threshold is met even without considering LG's anticipatory breach claim and its demand for liquidated damages, the court need not address these items.

[8] In its opposition brief, PSID refers to LG's demand to convert 65,536 shares of common stock, rather than 65,536,000 shares. (See generally Def. Opp'n.) This discrepancy appears to be a clerical error rather than a substantive disagreement with LG's figure of 65,536,000. (See Ex. 1 to Suppl. Decl. of William Caragol in Opp'n to Mot. (Dkt. 18-1) (listing the number of Conversion Shares as 65,536,000); Hr'g Tr. 48:3-9 (PSID acknowledging that the parties agree on the total number of Conversion Shares).)

[9] This figure represents the 65,536,000 Conversion Shares multiplied by the closing price ($.0006) on January 24, 2017—the date on which LG submitted its Notice of Conversion.

anticipatory breach of the Note, LG has demonstrated that there is at least a reasonable probability that the total amount in controversy is at least $89,321.60 and so exceeds the threshold requirement for purposes of diversity jurisdiction.

Furthermore, PSID has not established "to a legal certainty that the amount recoverable does not meet the jurisdictional threshold." See Scherer, 347 F.3d at 397. PSID's argument that LG's recovery will be limited to $17,000 relies on the erroneous assumption that PSID's affirmative defense of usury[10] can "be used to whittle down the amount in controversy." See id. The court therefore rejects this argument and finds PSID has not met the "high bar" for overcoming the presumption that "the face of the complaint is a good faith representation of the actual amount in controversy." See id. (internal citation omitted).

### B. LG's Motion For A Preliminary Injunction Is Denied

Having determined that the court has jurisdiction over this matter, the court turns to the merits of LG's Motion. For the reasons set forth below, the court finds that LG has not made a strong showing that it will suffer irreparable harm if the court declines to grant the requested injunction. The court therefore denies the Motion. See Rodriguez ex rel. Rodriguez v. DeBuono, 175 F.3d 227, 234 (2d Cir. 1999) (per curiam) ("In the absence of a showing of irreparable harm, a motion for a preliminary injunction should be denied.").

---

[10] See Nat'l Equip. Rental, Ltd. v. Hendrix, 565 F.2d 255, 257 (2d Cir. 1977) (discussing usury as an affirmative defense); see also Hillair Capital Invs., L.P. v. Integrated Freight Corp., 963 F. Supp. 2d 336, 339 (S.D.N.Y. 2013) ("'Usury is an affirmative defense . . . .'") (citing Gandy Mach., Inc. v. Pogue, 483 N.Y.S.2d 744, 744 (N.Y. App. Div. 1984)).

### 1. Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Nat. Res. Def. Council, 555 U.S. 7, 24 (2008). To obtain a preliminary injunction, the moving party must demonstrate:

> (1) irreparable harm;
>
> (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make it a fair ground for litigation, and a balance of hardships tipping decidedly in its favor; and
>
> (3) that a preliminary injunction is in the public interest.

Actavis PLC, 787 F.3d at 650. The same standard applies to motions for preliminary declaratory relief. Merrill Lynch, Pierce, Fenner & Smith Inc. v. Doe, 868 F. Supp. 532, 536 (S.D.N.Y. 1994). Where, as here, a party is moving for a mandatory injunction that alters the status quo by commanding a positive act, the moving party must meet a higher standard, however:

> [T]he movant must show a clear or substantial likelihood of success on the merits, . . . and make a strong showing of irreparable harm, . . . in addition to showing that the preliminary injunction is in the public interest.

Id. (emphasis added) (internal quotation marks and citation omitted).

### 2. LG Has Not Made the Required Showing of Irreparable Harm

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009) (internal quotation marks and citation omitted). To satisfy the irreparable harm requirement, the movant "must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." Id. (internal citation

10

omitted). Except in "extraordinary circumstances," injunctions are unavailable where "there is an adequate remedy at law, such as an award of money damages." Id. (internal citation omitted).

LG argues that it does not have an adequate remedy of law for two reasons: (1) PSID is near insolvency and is "unlikely" to be able to satisfy a money damages award should LG prevail in this action; and (2) it will be "exceedingly difficult" to calculate monetary damages "with reasonable certainty." (Pl. Mem. at 7-10.)

*i. Imminent Insolvency*

"[A] finding of irreparable harm may lie in connection with an action for money damages where the claim involves an obligation owed by an insolvent or a party on the brink of insolvency." CRP/Extell Parcel I, L.P. v. Cuomo, 394 F. App'x 779, 781 (2d Cir. 2010) (summary order) (citing Brenntag Int'l Chems., Inc. v. Bank of India, 175 F.3d 245, 249-50 (2d Cir. 1999)). In order to utilize this exception to the general rule that a monetary injury does not constitute irreparable harm, however, "a movant must show that the risk of insolvency is likely and imminent." Id. (citing Grand River Enter. Six Nations, Ltd. v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007)); cf. Sampson v. Murray, 415 U.S. 61, 90 (1974) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.").

LG recites a variety of statistics that it argues prove that PSID is on the verge of insolvency. As of December 31, 2016, PSID "had $1.12 million current assets, not all of which are salable" and "$11.4 million in current liabilities, which, by definition will become due within 12 months." (Pl. Reply at 9.) "While [PSID] boasts over $5.5 million in revenues, after deducting the cost of revenues and the operating expenses, [PSID]'s 10-K shows an operating loss of over $7 million. Even grimmer is [PSID]'s net loss of over $13 million." (Id. (citing

11

PSID Form 10-K (Dkt. 13-1) at ECF p.51).) Indeed, by its own admission, PSID's "ability to continue as a going concern is dependent upon [PSID's] ability to obtain financing to fund the continued development of products, and working capital requirements." (See PSID Form 10-K at ECF p.16.)

PSID responds that although it is an "early stage growth company, with substantial debt," it is "not imminently at risk of becoming insolvent." (Def. Opp'n at 11.) "PSID is an exciting company, under contract with the Department of Homeland Security, with $5.6 million in revenue in [2016], currently servicing 99% of its outstanding (non-LG) debt." (Caragol Decl. ¶ 30.) PSID's revenues increased by 89% from 2015 to 2016. (Id. ¶ 31.) Using the positive cash-flow basis solvency test, PSID asserts that it has "more than enough money to cover its monthly expenses each month, and does so while growing [its] business." (Id. ¶ 46.)

The court finds that LG has not met its burden of proving that PSID is in imminent danger of becoming insolvent. See CRP/Extell, 394 F. App'x at 781. Although aspects of PSID's finances, including PSID's significant operating losses, may be concerning to its creditors, other facts evidence PSID's continuing ability to operate as a going concern. PSID's revenues continue to grow and PSID continues to attract investors, a point which LG appears to concede. (See Hr'g Tr. 39:10-40:1 (LG conceding that lenders are "interested in [PSID's] stock").) Moreover, according to PSID's Chief Executive Officer, the company has "no declared defaults on the $6 million of debt that it is has been serv[icing] (aside from LG . . . )." (Caragol Decl. ¶ 47.) As PSID has aptly noted, whether PSID is near insolvent is a fact-intensive question, which cannot properly be decided on the basis of the current record. (See Hr'g Tr. 10:17-11:17.) LG "has, at most, shown that there is a possibility that [PSID] may be insolvent by the time this case is fully litigated, however, that mere possibility is speculative and

cannot satisfy [LG's] burden to show that [it] is likely to suffer irreparable harm if equitable relief is denied." See Meringolo v. Power2ship, No. 03-CIV-4476 (PKL), 2003 WL 21750009, at *5 (S.D.N.Y. July 28, 2003).

### ii. Difficulty Calculating Damages

LG maintains that it will be extremely difficult to calculate its damages with reasonable certainty "due to PSID's stock price and trading volume volatility as well as the difficulty of determining the date upon which LG could have sold the shares of PSID Common Stock on the open market." (Pl. Mem. at 9.) While difficulty calculating damages is a factor that can favor granting injunctive relief, see Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 68-69 (2d Cir. 1999), the court finds that LG's damages are easily measurable and compensable with monetary damages.

Under New York law, damages for breach of contract are "determined by the loss sustained or gain prevented at the time and place of breach." Simon v. Electrospace Corp., 269 N.E.2d 21, 26 (N.Y. 1971). This rule extends to situations where "the breach of contract is nondelivery of shares of stock." Id.; see Lucente v. Int'l Bus. Machines Corp., 310 F.3d 243, 262 (2d Cir. 2002). Specifically, "where [a] breach involves the deprivation of an item, such as a stock, with a determinable market value, the market value at the time of the breach is the measure of damages." Sharma, 916 F.2d at 825 (explaining that "[m]easuring contract damages by the value of the item at the time of the breach is eminently sensible and actually takes expected lost future profits into account"). As such, courts have "rejected the contention that in order to calculate damages it would necessary to speculate when and if a plaintiff would sell its stock." LG Capital Funding, LLC v. Vape Holdings, Inc., No. 16-CV-2217 (CBA) (LB), 2016 WL 3129185, at *4 (E.D.N.Y. June 1, 2016) (citing Laurus Master Fund, Ltd. v. Valcom, Inc.,

No. 02-CV-1480 (WK), 2002 WL 432686, at *3 (S.D.N.Y Mar. 19, 2002) (emphasizing that if the court were to find irreparable harm based on the purported difficulty of determining when stock would be sold "then every case involving a contract to convert stock would amount to per se irreparable harm")).

It is therefore no surprise that courts routinely refuse to order specific performance in actions like this in which a defendant breaches its obligation to deliver public stock. See, e.g., Lucente, 310 F.3d at 262 (denying remedy of specific performance and noting that there is "simply no reason why, assuming a jury finds [defendant] liable for breach of contract, money damages would not adequately compensate [plaintiff] for [defendant's]" failure to deliver publicly traded shares upon exercise of stock option); Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams., No. 04-CV-10014 (PKL), 2006 WL 1493132, at *8 (S.D.N.Y. May 31, 2006) (finding specific performance was not a proper remedy where "[t]he subject matter of the [contract]—the underlying . . . shares—has an established market value, and, therefore, there would be no difficulty proving damages with reasonable certainty"); Simon, 269 N.E.2d at 26 (holding specific performance was not proper remedy for defendant's breach of agreement to deliver stock that was "property not unique and available on a public market").

The court therefore rejects LG's argument that calculating damages will be sufficiently difficult to justify granting injunctive relief.

\* \* \*

Accordingly, the court concludes that LG has failed to make the strong showing of irreparable harm required for a mandatory injunction, and denies the Motion.

## III. CONCLUSION

For the foregoing reasons, LG's Motion for a Preliminary Injunction (Dkt. 2) is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
June 9, 2017

s/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge